```
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| OLAMIDE OLORUNNIYO ORE,                              )<br>                                                      )<br>        Plaintiff,                                   )<br>                                                      )<br>        v.                                            )<br>                                                      )<br>HILLARY RODHAM CLINTON, Secretary of                  )<br>the Department of State;                              )<br>JAMES B. STEINBERG, Deputy Secretary of               )   CIVIL ACTION<br>the Department of State, PATRICK F.                   )   NO. 08-11409-WGY<br>KENNEDY, Under Secretary of State for                 )<br>Management of the Department of State,                )<br>JANET NAPOLITANO, Secretary of the                    )<br>Department of Homeland Security;                      )<br>JONATHAN SCHARFEN, Director of the U.S.               )<br>Citizenship & Immigration Services;                   )<br>PAUL NOVAK, Director of the Vermont                   )<br>Service Center of U.S. Citizenship &                  )<br>Immigration Services,                                 )<br>                                                      )<br>        Defendants.                                   ) | |

MEMORANDUM AND ORDER

YOUNG, D.J.

December 23, 2009

**I.   INTRODUCTION**

The plaintiff, Olamide Olorunniyo Ore ("Ore"), has filed an Amended Complaint challenging decisions of the named government defendants within the United States Department of State and the United States Department of Homeland Security, Citizenship, and Immigration Service (collectively the "Government") denying Ore an L-1 nonimmigrant visa to enter the United States as an intracompany transferee of Elizore Properties, a Texas-based real estate development company whose alleged affiliate corporation,

Elizore Nigeria, Limited ("Elizore Nigeria"), is located in Nigeria.

Ore is the beneficiary of three L-1 intracompany transferee visa ("L-1 visa") petitions filed by Elizore Properties with the United States Citizenship and Immigration Service ("USCIS").  The L-1 visa allows managers, executives, and employees with specialized skills to transfer from a foreign company to its U.S. office, subsidiary, or affiliated company to perform temporary services.

USCIS denied the visa petitions because the petitioner, Elizore Properties, has repeatedly failed to provide sufficient evidence to establish eligibility for the visa.  Specifically, Elizore Properties failed to show (1) that Ore was employed abroad for a continuous period of one year during the three years preceding the filing of the visa petitions, (2) that Ore was employed in a managerial/executive capacity, and (3) that the foreign employer (Elizore Nigeria) had a qualifying relationship with the U.S. employer (Elizore Properties).

Ore sought judicial review of USCIS's  decisions, pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA").  Am. Compl. ¶¶ 17, 25 [Doc. 6].  Ore alleged that USCIS "failed to properly adjudicate" the L-1 visa petitions.  Ore also claimed that USCIS's actions were "arbitrary, capricious and based upon a regulation that contradicts the statute it was promulgated to enforce."  Pl.'s Mem. Supp. Mot. Summ. J. 4  [Doc. 14].  Pursuant to the APA, a federal court shall hold unlawful and set aside agency action, findings, and conclusions found to

be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

**A.   FACTS**

Ore is a citizen of Nigeria.  From August 28, 2000 to June 3, 2002, Ore entered the United States as a B-2 Visitor.  Defs.' Mem. Supp. Cross. Mot. Summ. J., Ex. A ("Defs.' Ex. A") at 25 [Doc. 17].  On January 10, 2003, Ore re-entered the United States as an F-1 Student attending Boston University.  Id.  Ore attended Boston University until June 25, 2008, when he last departed the United States.  Id.  During his five years at Boston University, Ore departed from and returned to the United States four times for one to two weeks each time.

   1.   First Visa Petition

On or about September 10, 2007, an L-1 visa petition was filed with USCIS on Ore's behalf by Elizore Properties ("First Visa Petition").  Defs.' Ex. A at 2–7.

On November 6, 2007, USCIS issued a request for evidence with respect to the First Visa Petition.  Defs.' Mem. Supp. Cross. Mot. Summ. J. 2, ¶ 4.  When Elizore Properties failed to respond to the request, the First Visa Petition was denied for abandonment.  Id.  For some unknown reason, on February 11, 2008, USCIS subsequently approved the First Visa Petition.  Defs.' Ex. A at 8.  The First Visa Petition was then forwarded to the U.S. Department of State Consulate in Vancouver, Canada ("Consulate").  Id. at 9–15.  The Consulate refused to issue the L-1 visa because Ore's consular interview revealed that he did not have the requisite experience to be an intracompany transferee.  Id. at

3

16. The subsequent denial is authorized by 8 U.S.C. § 1201(g), which states that "[n]o visa or other documentation shall be issued to an alien if . . . (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa . . . ." The First Visa Petition was returned to USCIS by the Consulate, with a recommendation that USCIS's initial approval be revoked.

In light of the foregoing, Ore filed a complaint in this Court, followed by an amended complaint on August 20, 2008, alleging (1) misinterpretation of the law by the Consulate in denying Ore's visa and (2) failure by USCIS to timely adjudicate the First Visa Petition following the Consulate's recommendation. The Amended Complaint requested the U.S. Department of State to properly adjudicate the visa application and requested that USCIS issue a Notice of Decision. Am. Compl. ¶ 27.

On October 2, 2008, USCIS issued a notice of intent to revoke the approval of the First Visa Petition and requested additional evidence to support the petition. Defs.' Ex. A at 17-21. Accordingly, on January 13, 2009, the parties filed a Stipulation of Dismissal, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), because the requested actions had been carried out.

On February 12, 2009, after reviewing Elizore Properties' response to the notice of intent to revoke, USCIS revoked the First Visa Petition. Defs.' Ex. A at 22-29. USCIS determined that the new evidence submitted did not overcome the grounds for revocation previously identified. Id. at 22.

### 2. Second Visa Petition

On December 29, 2008, while the decision for the First Visa Petition was still pending, Elizore Properties filed a second L-1 visa petition ("Second Visa Petition"). Defs.' Ex. A at 30-33. On January 8, 2009, USCIS requested additional evidence to support the Second Visa Petition. Id. at 31. On March 20, 2009, USCIS denied the Second Visa Petition, again finding that Ore failed to qualify for an L-1 visa. Id. at 32.

### 3. Third Visa Petition

On March 27, 2009, Elizore Properties filed a third L-1 visa petition on behalf of Ore ("Third Visa Petition"). Defs.' Ex. A at 34-41. On April 9, 2009, USCIS issued a notice of intent to deny and requested evidence that Ore had been employed continuously for one year in a managerial or executive capacity. Defs.' Ex. A at 43. On May 21, 2009, USCIS was not persuaded by the evidence submitted and denied the Third Visa Petition. Id.

### 4. Motion to reopen action granted

On April 21, 2009, Ore moved to reopen this action. Ore's motion was granted on May 12, 2009.

### 5. Cross motions for summary judgment

The present case concerns cross motions for summary judgment filed by Ore and the Government. In his motion for summary judgment, Ore argues that USCIS's revocation of the First Visa Petition and denials of the Second and Third Visa Petitions were arbitrary, capricious and based upon a regulation that contradicts the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. ("INA"). Accordingly, Ore asks this Court to order the

Government to issue the L-1 visa or, alternatively, order the Government to vacate its previous decisions, rescind the unlawful regulation and issue a new decision based upon the record.

In its cross motion for summary judgment, the Government argues that non-exhaustion of administrative remedies means that this Court lacks subject-matter jurisdiction over the dispute. The Government further argues that USCIS's decisions are well-founded and did not amount to an abuse of discretion.

### B.  REQUIREMENTS OF THE L-1 VISA

Section 1101(a)(15)(L) of INA defines an "intracompany transferee" as a class of nonimmigrant aliens who:

> within 3 years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge . . . .

8 U.S.C. § 1101(a)(15)(L).

The petitioner bears the burden of proving eligibility for an L-1 visa. 8 U.S.C. § 1361. The petitioner is the U.S. employer, and the beneficiary is the employee who will hold the managerial position in the United States. In order to support its application, the petitioner must supply the following:

> (i) Evidence that the petitioner and the organization which employed or will employ the alien are qualifying organizations as defined in paragraph (l)(1)(ii)(G) of this section.
>
> (ii) Evidence that the alien will be employed in an executive, managerial, or specialized knowledge capacity,

including a detailed description of the services to be performed.

(iii) Evidence that the alien has at least one continuous year of full-time employment abroad with a qualifying organization within the three years preceding the filing of the petition.

(iv) Evidence that the alien's prior year of employment abroad was in a position that was managerial, executive, or involved specialized knowledge and that the alien's prior education, training, and employment qualifies him/her to perform the intended services in the United States; however, the work in the United States need not be the same work which the alien performed abroad.

8 C.F.R. § 214.2(l)(3).

### 1. Definition of managerial capacity

The petitioner must present evidence that the alien beneficiary held a managerial position during his one-year continuous employment abroad. 8 C.F.R. § 214.2(l)(3)(iii). Managerial position means a position within an organization in which the employee primarily:

(1) Manages the organization, or a department, subdivision, function, or component of the organization;

(2) Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

(3) Has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) if another employee or other employees are directly supervised; if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

>   (4) Exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.  A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

8 C.F.R. § 214.2(l)(1)(ii)(B).

>    2.   Definition of qualifying organization

The petitioner must present evidence of the existence of a qualifying relationship between the foreign entity and the U.S. entity.  8 C.F.R. § 214.2(l)(3)(iii).  In other words, the U.S. entity must have the following relationships vis-à-vis the foreign entity: parent, branch, affiliate or subsidiary.  8 C.F.R. § 214.2(l)(1)(ii)(G)(1).  The regulations define these relationships:

>   (I) Parent means a firm, corporation, or other legal entity which has subsidiaries.
>
>   (J) Branch means an operating division or office of the same organization housed in a different location.
>
>   (K) Subsidiary means a firm, corporation, or other legal entity of which a parent owns, directly or indirectly, more than half of the entity and controls the entity; or owns, directly or indirectly, half of the entity and controls the entity; or owns, directly or indirectly, 50 percent of a 50-50 joint venture and has equal control and veto power over the entity; or owns, directly or indirectly, less than half of the entity, but in fact controls the entity.
>
>   (L) Affiliate means
>
>       (1) One of two subsidiaries both of which are owned and controlled by the same parent or individual, or
>
>       (2) One of two legal entities owned and controlled by the same group of individuals, each individual

>       owning and controlling approximately the same share
>       or proportion of each entity . . . .

8 C.F.R. § 214.2(l)(1)(ii).

### C. JURISDICTION

This Court has jurisdiction pursuant to 5 U.S.C. § 706(2)(A), which provides that a federal court shall hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

### 1. Ore has standing to seek judicial review

The Government argues that since Ore has no standing to appeal the agency decision through the administrative appeals process provided by USCIS, he also lacks standing to bring suit before this Court.  Defs.' Mem. Supp. Cross Mot. Summ. J. 8, n.4.  See 8 C.F.R. § 103.3(a)(1)(iii)(B) ("[A]ffected party . . . means the person or entity with legal standing in a proceeding.  It does not include the beneficiary of a visa petition.").  Whether a litigant has standing to sue in federal court, however, is not dependent on any agency regulation.  Instead, the Supreme Court has established a three-factor test for standing, requiring (1) injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a substantial likelihood that the requested relief will remedy the injury in fact.  McConnell v. Fed. Election Comm'n, 540 U.S. 93, 225 (2003).  As the person who stands to benefit from being permitted to enter to the United States to work, Ore clearly has suffered an injury caused by USCIS's action, which this Court has the power to set aside

pursuant to the APA.  Accordingly, Ore has standing before this Court.

### 2. Requirement of final agency decision

The APA provides that a "**final** agency action for which there is no other adequate remedy in a court [is] subject to judicial review."  5 U.S.C. § 704 (emphasis added).  According to the Government, there is no "final" agency action in the present case because Elizore Properties has failed to avail itself of the administrative appeals process provided by USCIS.  Defs.' Mem. Supp. Cross Mot. Summ. J. 7-8.

#### a. Administrative appeals process provided by USCIS

In immigration proceedings, the appellate review authority is divided between the Administrative Appeals Office ("AAO") within USCIS, and the Board of Immigration Appeals ("BIA").  In the present case, the AAO had authority to consider appeals from the three visa petitions.  Defs.' Ex. A at 29.

#### b. Non-mandatory appeals need not be exhausted prior to seeking judicial review under APA

The Supreme Court has ruled that in cases seeking judicial review pursuant to the APA, a plaintiff is not required to exhaust non-mandatory administrative remedies.  Darby v. Cisneros, 509 U.S. 137, 153-54 (1993).  The Supreme Court based its decision on the language of 5 U.S.C. § 704, which states that an agency decision is deemed final, and therefore immediately subject to judicial review, despite the possibility of any form of reconsideration or appeal, unless an appeal is mandatory or "require[d] by rule" where the rule also makes the agency

decision "inoperative" pending the outcome of the appeal. Id. In other words, non-mandatory appeals need not be exhausted prior to judicial review because the agency action is already deemed "final" by 5 U.S.C. § 704.

Darby's interpretation of 5 U.S.C. § 704 was cited with approval in a recent First Circuit decision, Nkihtaqmikon v. Impson, 585 F.3d 495, 498-99 (1st Cir. 2009). Applying the Darby doctrine to the immigration context, an appeal is not required prior to seeking judicial review if: (1) there is no statute or regulation that mandates an appeal to the AAO, or, (2) even if there is such a statute or regulation, it does not stay the agency decision pending the outcome of the appeal.

        c.    For L-1 visa decisions, appeal to AAO is not mandatory

The INA does not require an appeal to the AAO. Further, the regulations governing L-1 visas plainly state that an appeal from a USCIS decision is optional, not mandatory. 8 C.F.R. § 214.2(l)(10) ("A petition denied in whole or in part **may** be appealed under [8 C.F.R. part 103].") (emphasis added).

The only First Circuit case cited by the Government in support of its contention that administrative remedies must be exhausted is Bernal-Vallejo v. I.N.S., 195 F.3d 56 (1st Cir. 1999). Bernal-Vallejo, however, is distinguishable because it concerns a different type of visa and a different immigration appeals body, namely the BIA. Id. at 59. Application of the Darby doctrine is context-specific and requires examination of the entire body of statutes and regulations to determine if an

appeal is mandatory or optional.  One cannot take the outcome in Bernal-Vallejo and simply transplant it into the present case.

Elizore Properties' failure to take an optional appeal to the AAO has, in USCIS's own words, made its decision "final." Defs.' Ex. A at 29 ("If an appeal is not filed within the time allowed, this decision is **final**.") (emphasis added). Accordingly, this Court has jurisdiction to hear this case pursuant to 5 U.S.C. § 706.

## II.  ANALYSIS

### A.   STANDARD OF REVIEW

A motion for summary judgment is to be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The APA sets out the standards of judicial review of agency action.  See 5 U.S.C. § 706(2).  An abuse of discretion occurs "only if there is no evidence to support the decision or if the decision is based on an improper understanding of the law." Song Jook Suh v. Rosenberg, 437 F.2d 1098, 1102 (9th Cir. 1971).  The Supreme Court has held that:

> [n]ormally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

### 1. Judicial review is confined to the administrative record

Judicial review is limited to the agency's administrative record. See Guy v. Glickman, 945 F. Supp. 324, 329 (D.D.C. 1996) ("It is well settled that judicial review of agency action is generally restricted to the full administrative record before the agency at the time the decision was made (internal citation omitted).  The focal point for judicial review should be the administrative record already in existence, not some new record completed initially in the reviewing court.").

### 2. If decision is based on multiple grounds, every ground must be arbitrary, capricious, or unlawful

Where denial of a visa petition is based on multiple grounds, a plaintiff will succeed on his challenge only if he shows that USCIS abused its discretion with respect to all of the enumerated grounds.  See Spencer Enter., Inc. v. United States, 229 F. Supp. 2d 1025, 1037 (E.D. Cal. 2001), aff'd, 345 F.3d 683 (9th Cir. 2003).  See also BDPCS, Inc. v. F.C.C., 351 F.3d 1177, 1183 (D.C. Cir. 2003) (noting that an appellate court may affirm an agency decision based on multiple grounds so long as any one of the grounds is valid).  In other words, when an agency relies on multiple grounds for its decision, some of which are invalid, a reviewing court may nonetheless sustain the decision as long as one ground is valid and "the agency would clearly have acted on that ground even if the other[s] were unavailable."  Mail Order Ass'n of America v. U.S. Postal Serv., 2 F.3d 408, 434 (D.C. Cir. 1993) (quoting Syracuse Peace Council v. F.C.C., 867 F.2d 654, 657 (D.C. Cir. 1989)).

**B.   GROUND ONE: ORE WAS NOT EMPLOYED IN A MANAGERIAL CAPACITY**

With respect to all three petitions, USCIS's determination that there was insufficient evidence to support a finding that Ore was employed abroad in a managerial position was not arbitrary or capricious.

1. First Visa Petition

In connection with the First Visa Petition, the petitioner was asked to submit evidence to overcome the fact that Ore was studying in the United States during the period he claimed to be employed overseas.  In response, the petitioner claimed Ore's "history of employment in the family owned foreign entity spanned a larger period of time," and cited supplemental materials it had provided to the Consulate.  Defs.' Ex. A at 25.

These supplemental materials showed that Ore was hired as the Deputy Marketing Manager of Elizore Nigeria, effective February 1, 2004.  USCIS reasonably concluded that this evidence was not persuasive because during the period of alleged employment overseas, Ore was in the United States as an F-1 student.  Id.  As mentioned above, the one-year continuous employment must take place outside the United States.  8 C.F.R. § 214.2(l)(3)(iii); Karmali v. U.S. I.N.S., 707 F.2d 408, 411 (9th Cir. 1983) (holding that interpreting 8 U.S.C. § 1101(a)(15)(L) as requiring one year of continuous employment outside the United States is consistent with congressional intent).

The materials received by USCIS also indicate that Ore has been "an active shareholder" of Elizore Nigeria since July 8,

1998.  Defs.' Ex. A at 25.  USCIS reached a non-arbitrary decision in concluding that simply being an active shareholder of a business is not equivalent to being employed in a managerial capacity.  See id.

Finally, the supplemental materials included payroll records of Elizore Nigeria dating back to July 1998.  Defs.' Ex. A at 26. The records indicate that Ore received a monthly salary of approximately 400 U.S. dollars in 1998 and 677 U.S. dollars in 2000.  Id.  USCIS reasonably concluded that this salary is not commensurate with employment in a managerial capacity.  In any event, as USCIS reasoned, mere payment of salary does not establish a person's managerial role.  See id.

   2. Second Visa Petition

In considering the Second Visa Petition, USCIS had before it a letter appointing Ore to the position of Deputy Marketing Manager dated January 28, 2004.  Defs.' Ex. A at 32.  USCIS also considered a document submitted by the petitioner entitled "Typical Managerial Responsibilities of Mr. Olamide Olorunniyo Ore."  Id.  These documents claimed that Ore "ha[d] the sole responsibility for market survey both locally and in overseas with the assistance of three supervisors whom he frequently interact [sic] with via internet" and that he "obtains first hand information from his subordinates and gives final guidelines on execution of secured contracts."  Id.  Significant doubts, however, were cast on Ore's actual managerial duties when, at his Consulate interview, Ore could name only one employee of the company in which he allegedly held a managerial position and was

unable to describe his job responsibilities in any detail.  Id. Ore also did not know what his purported employees did or what they were paid.  Id.  In denying the Second Visa Petition, USCIS cited Matter of Ho, 19 I. & N. Dec. 582, 582 (BIA 1988), which ruled that "[d]oubt cast on any aspect of the petitioner's proof may lead to a reevaluation of the reliability and sufficiency of the remaining evidence offered in support of the visa petition." USCIS's conclusion, again, was not arbitrary or capricious.

### 3. Third Visa Petition

In response to the notice of intent to deny the Third Visa Petition, the petitioner included two letters of justification: one from Ore's counsel, and one from Ore.  Defs.' Ex. A at 44. USCIS did not act capriciously in refusing to consider the letters because they were not accompanied or supported by documentary evidence.  See Matter of Treasure Craft of California, 14 I. & N. Dec. 190, 190 (BIA 1972) (ruling that a submission without supporting documentary evidence is not sufficient for the purpose of meeting the burden of proof in visa petitions).

### C.  GROUND TWO: LACK OF QUALIFYING RELATIONSHIP BETWEEN ELIZORE PROPERTIES AND ELIZORE NIGERIA

Another ground for revoking the First Visa Petition was the lack of a qualifying relationship between Elizore Properties, the U.S. entity, and Elizore Nigeria, the foreign entity.  Defs.' Ex. A at 27-28.  Curiously, this ground was not cited in USCIS's decisions to deny the Second and Third Visa Petitions.

16

The petitioner submitted three share certificates for Elizore Properties, showing ownership of the U.S. entity as follows:

| Certificate Number | Owner | Number of Shares |
|---|---|---|
| 1001 | Olamide Ore (plaintiff) | 500 |
| 1002 | Olumuyiwa Samuel Ore | 400 |
| 1003 | Oluwandamilola Olumuyiwa Ore | 100 |

Pl.'s Mem. Supp. Mot. Summ. J., Ex. A at 6.

The petitioner also submitted the following list of shareholders for Elizore Nigeria, the foreign entity:

| Owner | Number of shares |
|---|---|
| Olumuyiwa Samuel Ore | 3,000,000 |
| Damilola Ore | 3,000,000 |
| Elizabeth Iyabo Ore | 3,000,000 |
| Olamide Ore | 3,000,000 |
| Temilola Ore | 3,000,000 |

Id. at 7.

Elizore Properties and Elizore Nigeria do not have a parent-subsidiary relationship since neither controls or owns shares in the other. See 8 C.F.R. §§ 214.2(l)(1)(ii)(K), 214.2(l)(1)(ii)(L).  The petitioner contends that the two companies "share an affiliation" because they "are owned and controlled by the same individuals, specifically the Ore family." Pl.'s Mem. Supp. Mot. Summ. J., Ex. A at 7.  The shareholding records submitted by the petitioner, however, do not fall within the precise definition of affiliates set out in the regulations. See 8 C.F.R. § 214.2(l)(1)(ii)(L).  The companies are not "two subsidiaries both of which are owned and controlled by the same parent or individual," id. at § 214.2(l)(1)(ii)(L)(1).  Further,

17

8 C.F.R. §214.2(l)(1)(ii)(L)(2) requires two legal entities to be owned and controlled by the same group of individuals.  The shareholders of Elizore Properties and Elizore Nigeria are not identical.  Further, these shareholders do not "control approximately the same share or proportion of each entity."  Accordingly, this ground for denying the First Visa Petition was not capricious or arbitrary, but well-supported by the evidence.

### D.   GROUND THREE: ONE YEAR CONTINUOUS EMPLOYMENT ABROAD

The regulations require the petitioner to present "evidence that the alien [beneficiary] has at least one continuous year of full-time employment abroad with a qualifying organization within the three years preceding the filing of the petition."  8 C.F.R. § 214.2(l)(3)(iii).  In other words, the petitioner must establish eligibility at the time of filing the nonimmigrant visa petition and not at some future date.  Matter of Michelin Tire Corp., 17 I. & N. Dec. 248, 249 (BIA 1978).  Assessed at the time of filing, all three visa petitions were properly denied for failure to present evidence of one-year continuous employment outside the United States.

Ore contends that USCIS applied the wrong time of assessment because 8 C.F.R. § 214.2(l)(3)(iii) is incompatible with its enabling statute.  Pl.'s Mem. Supp. Mot. Summ. J. 3.  See 8 U.S.C. § 1101(a)(15)(L) (defining the intracompany transferee as falling within a "class of nonimmigrant aliens" who, "within 3 years **preceding the time of his application for admission into the United States**, has been employed continuously for one year . . . .") (emphasis added).

This Court, need not address the issue whether 8 C.F.R. § 214.2(l)(3)(iii) is inconsistent with 8 U.S.C. § 1101(a)(15)(L) since, whatever the merits (if any) of Ore's argument on this issue, as USCIS did not abuse its discretion with respect to the other enumerated grounds for its decisions, this Court cannot set them aside.

Where agency decisions are based on multiple grounds, a plaintiff will succeed in judicial review only if the agency abused its discretion with respect to all enumerated grounds. In the present case, USCIS did not act arbitrarily and capriciously with respect to every ground upon which its decisions were based. Specifically, it reasonably concluded that the petitioner had not established (1) the managerial nature of Ore's position and (2) a qualifying relationship between Elizore Properties and Elizore Nigeria. Accordingly, Ore's motion for summary judgment is **DENIED** and the Government's cross-motion for summary judgment is **GRANTED**. Judgment shall enter for the Government.

SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE